J-S33002-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 4066 EDA 2017 |

Appeal from the Order Entered November 13, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-0001045-2016

| | | |
|---|---|---|
| IN THE INTEREST OF: C.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 4067 EDA 2017 |

Appeal from the Order Entered November 13, 2017
in the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-001047-2016

BEFORE:   OTT, J., McLAUGHLIN, J., and STEVENS, P.J.E.*

MEMORANDUM BY OTT, J.:                    **FILED JULY 11, 2018**

S.W. ("Mother") appeals from the November 13, 2017 permanency review orders that suspended her supervised visitation with her dependent female children, K.W., born in May of 2008, and C.W., born in March of 2010 (collectively, "the Children").  Upon careful review, we affirm.

_____
*   Former Justice specially assigned to the Superior Court.

In its opinion pursuant to Pa.R.A.P. 1925(a), the trial court set forth the factual and procedural history of this case, which the certified record supports. Therefore, we adopt it herein. *See* Trial Court Opinion, 1/30/18, at 1-5.

By way of background, the trial court adjudicated the Children dependent on May 31, 2016, and established reunification as their placement goal. In the same order, the court suspended Mother's supervised visits with the Children due to allegations that J.M. ("Father") sexually abused the Children "and that Mother was present during one of those incidents and allowed Father to remain in the home."[1] *Id.* at 3 (citation to record omitted). On June 14, 2017, the court reinstated Mother's supervised visits.

The subject permanency hearing occurred on November 13, 2017, at which time the Children were in kinship care with their maternal cousin. The trial court aptly summarized the testimony of Jennifer Rollins, the Community Umbrella Agency ("CUA") supervisor, as follows.

> Mother allegedly advised the Children to destroy the maternal cousin's home. As a result, C.W. set fire to the curtains in the

---

[1] Specifically, on April 28, 2016, Mother informed DHS that Father sexually abused C.W., the younger child, on March 24, 2016. *See* Trial Court Opinion, 1/30/18, at 2 (citation to record omitted). Mother informed DHS that, rather than immediately report the incident to DHS or the police, she contacted the "Steve Wilkos Show," which the court found is an American syndicated tabloid show where guests can undergo a lie detector test. *Id.* (citation to record omitted). Further, C.W. revealed that Father inappropriately touched her and that Mother was in the room at the time of the incident. *Id.* at 3 (citation to record omitted).

maternal cousin's bathroom. . . . C.W. also cut up her sneakers.[2] Ms. Rollins further testified that K.W. broke lamps in the cousin's home. These incidents occurred in September 2017,[3] and Ms. Rollins spoke with the Children on October 30, 2017. K.W. informed Ms. Rollins that during the supervised visit with Mother, Mother told her to destroy the cousin's home because the cousin is a bad person. Mother also asked K.W. during a visit if she remembered being sexually abused by Father. As a result of Mother's questions about Father, K.W. became upset and went into the bathroom and cried.[4] When Ms. Rollins spoke with C.W., C.W. informed her that Mother asked her to destroy the cousin's home. C.W. also admitted to setting fire to the curtains and cutting up her clothes and sneakers. Based on the statements made by the Children regarding Mother's behavior during visits, Ms. Rollins recommended that Mother's visits be suspended.

*Id.* at 4-5 (citations to record omitted).

The trial court interviewed the Children *in camera* during the permanency hearing. The court summarized their testimony, as follows.

C.W. admitted that she set fire to a curtain at the maternal cousin's home because Mother told her to do so. K.W. informed the [c]ourt that she becomes nervous during visits with Mother when Mother tells her that they are going to court. Both Children indicated that they want to remain living with the maternal cousin.

*Id.* at 5 (citations to record omitted).

_____

[2] In addition, Ms. Rollins testified that C.W. used an object to dig out molding around the toilet and bathtub. N.T., 11/13/17, at 11.

[3] Ms. Rollins testified that the maternal cousin was home when the Children started to destroy her property, and "[t]hat's how it was able to get stopped before it spiraled out of control." N.T., 11/13/17, at 20.

[4] At the adjudicatory hearing, the testimony revealed that K.W. had alleged an incident of sexual abuse by Father against her. N.T., 5/31/16, at 12. Ms. Rollins testified during the subject permanency hearing that K.W. receives trauma therapy due to the alleged abuse. N.T., 11/13/17, at 9.

By permanency orders dated and entered on November 13, 2017, the court maintained reunification as the placement goal, suspended Mother's supervised visits with the Children, and directed Mother to stay away from the maternal cousin, the maternal cousin's home, and the Children's school.

In addition, the trial court explained it emphasized on the record, in open court, at the conclusion of the testimonial evidence that "Mother's behavior may constitute criminal contempt and endangering the welfare of a child and advised DHS to inform the Special Victims Unit ("SVU") of the allegations against Mother." Trial Court Opinion, 1/30/18, at 5 (citations to record omitted).

Mother timely filed notices of appeal and concise statements of errors complained of on appeal, which this Court consolidated *sua sponte*. The trial court filed its Rule 1925(a) opinion on January 30, 2018.

On appeal, Mother presents the following issues:

A. Whether the trial court abused its discretion when it terminated [M]other's visits when there was no evidence presented that [M]other posed a grave threat to the child?

B. Whether the trial court abused its discretion when it terminated [M]other's visits when there existed a practicable alternative to visitation, when either supervised or therapeutic visits could have been ordered?

C. Whether the trial court abused its discretion when it ordered CUA to contact [SVU] to see if SVU wanted to investigate or press charges against [M]other based on statements that she allegedly made to the child[?] . . .

Mother's brief at 3.

Our scope and standard of review of Mother's issues are as follows:

In dependency proceedings our scope of review is broad. Nevertheless, we will accept those factual findings of the trial court that are supported by the record because the trial judge is in the best position to observe the witnesses and evaluate their credibility. We accord great weight to the trial judge's credibility determination. Although bound by the facts, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate.

*In re C.B.*, 861 A.2d 287, 294 (Pa. Super. 2004).

In her first issue, Mother claims that the court abused its discretion in suspending her supervised visitation because there was no testimonial evidence that Mother poses a grave threat to the Children. Mother claims that the court never made a finding that she poses a grave threat to them. We disagree.

In *In Re C.J.*, 729 A.2d 89 (Pa. Super. 1999), this Court explained that in dependency cases such as this, the standard against which visitation is measured depends upon the goal mandated in the family service plan. Where, as here, reunification remains the goal of the family service plan, visitation may not be denied or reduced unless it poses a grave threat. *Id*. at 95. Where the permanency goal is no longer reunification, the court may suspend, limit, or deny visitation if it is in the best interests of the child. *Id*. ("The 'best interests' standard, in this context, is less protective of parents' visitation rights than the 'grave threat' standard."). In *In re C.B.*, 861 A.2d at 293-294 (citations omitted), we explained,

The 'grave threat' standard is met when 'the evidence clearly shows that the parent is unfit to associate with his or her children;' the parent can then be denied the right to see them. This standard is satisfied when the parent demonstrates a severe mental or moral deficiency that constitutes a grave threat to the child.

Instantly, at the conclusion of the testimonial evidence, the trial court found as follows on the record in open court in issuing the subject order:

I was very disturbed by what the [C]hildren told me. . . . I do believe the [C]hildren. I believe that mom encouraged both [C]hildren to destroy their cousin's house. In the process they could have killed themselves. One of the problems we have in Family Dependency Court is finding caregivers for our children. And what mom did was effectively undermin[e] this system when she had a family member willing to take care of these [C]hildren. It [a]ffects whether people and family members will step up in the future.

I find mom's actions disgraceful.

N.T., 11/13/17, at 33-34. In its Rule 1925(a) opinion, the court explained:

[I]t is clear that the evidence established that Mother's conduct constituted a grave threat to the Children. Specifically, in advising the Children to destroy their caregiver's home, Mother placed the Children in grave danger. The Children could have suffered serious injury as a result of the fire C.W. set in the caregiver's home. This court found the Children's testimony that Mother advised them to destroy the caregiver's home credible. In the process of following Mother's orders, the Children could have killed themselves. Furthermore, this Court found that Mother's conduct threatened the safety of the Children's caregiver and could have affected her ability and desire to care for the Children, further putting the Children's well-being at risk. Furthermore, this Court was also concerned that Mother questioned K.W. about sexual abuse allegations against Father during a visit. Mother's behavior throughout the life of this case has demonstrated her inability to protect the Children. For these reasons, this Court found that Mother's conduct demonstrated a moral and mental deficiency that posed a grave threat to the Children. . . .

Trial Court Opinion, 1/30/18, at 7 (citations to record omitted). The testimony of Ms. Rollins and the Children related above supports the court's conclusion that Mother has demonstrated a severe mental or moral deficiency that constitutes a grave threat to the Children. Thus, Mother's first issue is without merit.

In her second issue, Mother argues that the court abused its discretion in suspending her visits when supervised or therapeutic visits could have been ordered. Mother relies upon *In Interest of Rhine*, 456 A.2d 608 (Pa. Super. 1983), wherein we stated:

> [P]arents whose visitation is opposed by the state constitute a grave threat to their child only where there are no practicable visitation options that permit visitation and protect the child.
>
> Unlike a custodial parent, the state can offer many alternatives to a parent seeking visitation. *Inter alia*, the state can provide, as it did in the instant case, counseling services and a supervised, neutral setting within which parental visitation may occur. Unless the state demonstrates with clear and convincing evidence that even supervised visitation would severely endanger the child, the court must deny the complete foreclosure of parental visitation as being contrary to the [Juvenile] Act's goal of family preservation.

*Id.* at 614.

In contrast to the instant matter, the *Rhine* Court held that the evidence "did not rise to the level of clear and convincing, competent evidence of a grave threat to the child." *Id.* at 620. In addition, Mother's deficiency here constituting a grave threat to the Children occurred during a supervised visit. Therefore, *Rhine* is distinguishable. Mother's second issue is without merit.

In her final issue, Mother argues that the court abused its discretion when it ordered DHS to report Mother's conduct to the SVU. Mother asserts that the court has no jurisdiction over criminal matters. Mother baldly asserts that she was prejudiced by the court in this regard.

The trial court stated at the conclusion of the testimonial evidence, "[A]s DHS has [sic] mandated reporters what I see is possible criminal contempt. Mom possibly endangered the welfare of a child and I'm ordering DHS to contact the Special Victims Unit and to inform them of what happened and see if they need to open a criminal investigation with respect to [M]other." N.T., 11/13/17, at 34.

In its Rule 1925(a) opinion, the court explained:

[T]his [c]ourt did not abuse its discretion when it advised the DHS workers to contact SVU as they are mandated reporters[5] and Mother's conduct may rise to the level of endangering the welfare of a child. As this [c]ourt is tasked with overseeing dependency cases, it is this [c]ourt's responsibility to protect children. If this [c]ourt believes that the parent's conduct may warrant criminal prosecution, this [c]ourt may advise parties to contact the appropriate authorities to investigate. In this case, the testimony established that Mother advised the Children to destroy their caregiver's home, and as a result, one of the Children set a fire in the caregiver's home. Mother's conduct may constitute a criminal act and therefore requires reporting.

---

[5] Pursuant to the Child Protective Services Law ("Law"), 23 Pa.C.S. § 6301, *et seq.*, DHS is required to report suspected child abuse to the Department of Human Services. **See** 23 Pa.C.S. § 6311(a)(8) (providing, "The following adults shall make a report of suspected child abuse . . . An employee of a social services agency, who has direct contact with children in the course of employment."); **see also** 23 Pa.C.S. § 6313 (Reporting Procedure). There is no prohibition from DHS also reporting suspected child abuse to law enforcement.

Trial Court Opinion, 1/30/18, at 9 (citation to record omitted). We discern no abuse of discretion.

We agree with the Children's counsel and guardian *ad litem* that, "the trial court did not attempt to exert any authority or jurisdiction over the criminal justice system. The trial court did not order the [SVU] to bring charges. It did not order the [SVU] to investigate Mother." Children's counsel's brief at 21. Moreover, the trial court's directive to DHS to contact the SVU was independent of its decision to suspend Mother's supervised visitation and consistent with its obligation to the dependent children under its supervision. Mother's final issue fails.

Because we conclude that none of Mother's issues entitles her to relief, we affirm the orders of the trial court.

Orders affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/11/18